## PAYNE, Agent, v. ALBRIGHT. (No. 2438.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1921. Appellee's Rehearing Denied Dec. 1, 1921. Appellant's Rehearing Granted Dec. 1, 1921.)

**1. Master and servant ⬅110—Interstate Commerce Commission's rule under Safety Appliance Act held a measure of railroad's duty to employé claiming under "additional" rule.**

Where the Interstate Commerce Commission by an order under Federal Safety Appliance Act (U. S. Comp. St. §§ 8630–8639c), adopted a rule requiring engines to be equipped with one step on each side of the pilot, and providing that nothing in the order should be construed as prohibiting a carrier from enforcing additional rules not inconsistent, a railroad company's use of a class of engines equipped with two steps without the Commission's approval required by section 8634 was not an adoption of an "additional rule" requiring such engines to be so equipped, and was ineffective as rule because not consistent with the Commission's rule, which applied to all engines.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Additional.]

**2. Master and servant ⬅110—Railroad equipping locomotive in compliance with rule of Interstate Commerce Commission under Safety Appliance Act not negligent.**

Where a railroad company has equipped an engine with one step on each side of the pilot as required by a rule adopted by the Interstate Commerce Commission under the Safety Appliance Act (U. S. Comp. St. §§ 8630–8639c), negligence on the part of the company cannot be predicated on a violation by it of the statute.

**3. Master and servant ⬅110—Railroad's removal of locomotive step in compliance with rules of Interstate Commerce Commission held not negligence.**

Where a railroad company after using an engine equipped with two steps on each side of the pilot removed the upper step to make the equipment with respect to steps conform to the rule adopted by the Interstate Commerce Commission under the Safety Appliance Act (U. S. Comp. St. §§ 8630–8639c), negligence could not be predicated on the removal of the step.

On Appellant's Motion for Rehearing.

**4. Appeal and error ⬅1175(3)—Where no cause of action existed for plaintiff, judgment in his favor reversed without remand for new trial.**

In action for negligent injury, where no negligence could be predicated on the part of defendant from the evidence and the pleadings, judgment for plaintiff will be reversed without being remanded for a new trial.

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by J. L. Albright against John Barton Payne, Agent. From judgment for plaintiff, defendant appeals. Reversed.

At 10 or 11 o'clock of the night of September 30, 1919, while discharging duty he owed as a "headlight trimmer" employed by the Director General of Railroads, then operating the Texas & Pacific Railway Company's line of road, appellee fell from the pilot of road engine 706 into a pit in said railway company's yard at Longview, and thereby suffered serious injury to his person. On the theory that he so fell because of negligence of the carrier, appellee sued and recovered the judgment for $12,500, from which the appeal is prosecuted.

In his petition appellee alleged that the engine he fell from belonged to a class the carrier had equipped with two steps (one elevated above the other) on the pilot, for use in going to the pilot deck or front part of the engine, and that two steps on engines of that class, because of their size, were proper and necessary for that purpose; that at the time of the accident the engine was equipped with only the lower one of the two steps it should have been equipped with; that said engine was then in the carrier's roundhouse, which was poorly lighted; that in attempting to go on the engine in the discharge of his duty he placed one of his feet on the step on the pilot, and reached with his other foot for the step which should have been and which he supposed was at a point on the pilot above the other step; that because the carrier had not equipped the engine with another step, or, if it had, had removed same, he found no support for his foot when he reached for the step, and thereby was caused to fall; that it was negligence on the part of the carrier not to have the engine equipped with two steps, and not to have the roundhouse lighted better than it was, and that its negligence in one or both of those respects was the proximate cause of the injury he suffered. Appellee further alleged that at the time of the accident the carrier was engaged in interstate commerce as a common carrier, that he was working for the carrier in such commerce, and that the engine was in a defective condition within the meaning of the federal safety appliance statute (sections 8631 to 8639, U. S. Comp. Stat.), in that it was equipped with only one when it should have been equipped with two steps on the pilot.

In its answer the carrier alleged that the pilot "was constructed and maintained," quoting, "in accordance with the rules of the Interstate Commerce Commission, which were made by authority of the laws of the United States, and the service that the plaintiff was performing, or about to perform, on said engine was for the purpose of equipping the same to pull or haul interstate commerce." The carrier also set up assumed risk and contributory negligence on the part of appellee as a defense against the recovery he sought.

In response to special issues submitted to them the jury found as facts:

(1) That the carrier "adopted for the class of locomotives on which the plaintiff was injured two steps on each side of the pilot as a standard of safety or as a precaution against injuries to employés in the use thereof under such circumstances as the plaintiff was using the engine."

(2) That "the failure of those operating the property of the railway company to have the engine from which the plaintiff fell equipped with two steps on the side from which plaintiff fell constituted negligence upon the part of those operating said property."

(3) That such negligence was the proximate cause of plaintiff's injury.

(4) That the plaintiff was not guilty of any negligence which proximately contributed to the accident.

(5) That plaintiff was not injured "by reason of a risk assumed by him."

(6) That plaintiff was damaged in the sum of $12,500.

Young & Stinchcomb, of Longview, for appellant.

Jones, Sexton & Jones, of Marshall, and E. M. Bramlette, of Longview, for appellee.

WILLSON, C. J. (after stating the facts as above). The parties to the appeal agree that at the time of the accident the carrier was engaged in interstate commerce, and that appellee was employed by it in such commerce, within the meaning of the federal Employers' Liability Act April 22, 1908 (sections 8657–8665, U. S. Comp. Stat.).

[1, 2] The terms of a rule adopted by the Interstate Commerce Commission by an order dated March 13, 1911, in force at the time appellee was injured, fixing "safety appliance standards" for locomotives used in road service, in conformity to the "safety appliance statutes" (sections 8630 to 8639c), required pilots on such engines to be equipped with two steps, "one on or near each end of buffer beam outside of rail, and not more than 16 inches above rail."

Appellant insists it conclusively appeared from the testimony that engine 706 was so equipped, and that negligence on the carrier's part could not be predicated on its failure to have two steps on each side of the pilot.

Appellee does not deny that the engine was equipped with steps as required by said rule. His contention is that the rule applicable was not that one, but one the carrier, as authorized (he asserts) by the order of said Commission referred to, had adopted, and which required engines of the class 706 belonged to to be equipped with two steps on each side of the pilot. The insistence is based on a proviso in said order that nothing contained in it should "be construed," quoting,

"as prohibiting any carrier from enforcing additional rules and instructions not inconsistent with the foregoing, tending to a greater degree of precaution against accidents," and on testimony showing that engines of the 706 class were equipped with two steps on each side of the pilot when same were purchased by the carrier, and that they were afterwards used by it as so equipped. It is argued that such use was in effect an adoption by the carrier of an "additional rule," within the meaning of said proviso, applicable to that particular class of engines, that by such adoption it became a "safety appliance rule" within the act of Congress, which the carrier violated when it removed the upper one of the two steps on 706, and that a consequence of such violation of such "additional" rule by the carrier was to render it liable to appellee as it would have been had he been injured as a result of a violation by it of a safety rule directly prescribed by said Commission.

It is clear, we think, that the contention should not be sustained.

Even if it should be conceded that the use of the particular class of engines so equipped was an adoption of a rule requiring them to be so equipped, we think it would have to be held, nevertheless, that the rule was not one the carrier was authorized to make; for it was not consistent with the rule the Commission had adopted, and, if given effect, would not operate as an "addition" to that rule, but as a substitute for it, so far as engines of the particular class were concerned.

The rule promulgated by the Commission applied to all road engines alike. If, therefore, the rule which appellee claims the carrier adopted did not operate as a substitute for the Commission's rule, two rules were applicable to the class of engines in question—one requiring them to be equipped with one step; and the other requiring them to be equipped with two steps on each side of the pilot. In that case the carrier could not comply with one of the rules without violating the other one. Of course, the proviso in question, in the absence, as is the case, of language imperatively demanding it, should not be construed as authorizing the creation of such a situation.

It is not pretended in the record that the rule which appellee says the carrier had adopted has been approved by the Interstate Commerce Commission. That the carrier could not, without such approval, make and enforce a rule of its own inconsistent with a rule approved by the Commission, we think is clear.

The intention of Congress in passing the safety appliance statute plainly was to confer on the Commission alone the power, and impose on it alone the duty, to provide such rules and instructions as in its judgment were necessary to accomplish the purpose of the act. It was specifically declared that rules and instructions prepared as provided in the act should not take effect until they were approved by the Commission; and, while the statute authorized the carrier "from time to time to change the rules and regulations" approved by the Commission, it declared that such change should "not," quoting, "take effect and the new rules and regulations be in force until the same shall have been filed with and approved by the Interstate Commerce Commission." Section 8634.

Being of the opinion, as indicated by what has been said, that if the rule appellee contends for was adopted by the carrier, it was not effective, because it was not "additional" to a rule approved by the Commission, nor consistent with the applicable rule approved by it, it follows we are of the opinion said applicable rule, invoked by appellant, defined and measured the carrier's duty with reference to equipping engine 706 with steps. And, it appearing from the testimony that the carrier had equipped said engine with one step on each side of the pilot as required by said rule, it follows from the holding of the Supreme Court in Lancaster v. Allen, 110 Tex. 213, 217 S. W. 1032, that negligence on its part could not be predicated on a violation by it of the safety appliance statute.

[3] Appellee, however, does not, it seems, rest his contention that the judgment is not erroneous on the theory alone that in using engine 706 with only one step it violated the safety appliance statute. He insists the judgment is supported by testimony above referred to showing that the carrier, after using engines of the class mentioned with two steps on each side of the pilot, removed the upper one of the two from engine 706, and testimony showing that appellee was ignorant of the fact that it had been removed at the time he undertook to climb the pilot. We have just held that it appeared the carrier had complied with the requirement of the rule of the Interstate Commerce Commission with respect to the equipment of the engine with steps, and therefore that judgment against it on the theory that it had violated the safety appliance statute was not warranted. We now hold, on authority of the case cited above (Lancaster v. Allen, 110 Tex. 213, 217 S. W. 1032), that negligence on the carrier's part could not be predicated on the fact that it removed the upper one of the two steps on the side of the pilot, for in doing so it was doing nothing more nor less than making the equipment of the engine with respect to steps thereon conform to the requirement of the applicable rule of the Interstate Commerce Commission.

Whether, if an issue had been made by the pleadings and the testimony, within a rule

of law stated by a Georgia court in Seaboard Air Line Ry. v. Witt, 4 Ga. App. 149, 60 S. E. 1012, as follows:

"Wherever a material change in the intrinsic condition or relative arrangement of the instrumentalities by which the work is being done is made by the master, and is of such a nature as that it is likely to expose a servant, ignorant of the change, to a risk of injury, from his likelihood of assuming a continuation of the previous condition and acting on it, the master is under the duty of giving the servant notice of it, unless the latter by ordinary care should himself have discovered the alteration"

—the judgment should be sustained, is not before us for determination; for it does not appear from the pleadings in the record sent to this court that appellee charged negligence on the carrier's part in failing to warn him of the fact that it had removed one of the steps.

The judgment will be reversed, and the cause will be remanded to the court below for a new trial.

### On Appellee's Motion for Rehearing.

The part of section 5 of the Safety Appliance Act of February 19, 1911, with reference to locomotive boilers (section 8634, U. S. Compiled Statutes), referred to in the opinion of this court, and made applicable to the "entire locomotive and tender and all their parts" by the Act March 4, 1915 (section 8639b, U. S. Compiled Statutes), is as follows:

"Each carrier subject to this act shall file its rules and instructions for the inspection of locomotive boilers with the chief inspector within three months after the approval of this act, and after hearing and approval by the Interstate Commerce Commission, such rules and instructions, with such modifications as the Commission requires, shall become obligatory upon such carrier: Provided, however, that if any carrier subject to this act shall fail to file its rules and instructions the chief inspector shall prepare rules and instructions not inconsistent herewith for the inspection of locomotive boilers to be observed by such carrier; which rules and instructions being approved by the Interstate Commerce Commission, and a copy thereof being served upon the president, general manager, or general superintendent of such carrier, shall be obligatory, and a violation thereof punished as hereinafter provided: Provided also, that such common carrier may from time to time change the rules and regulations herein provided for, but such change shall not take effect and the new rules and regulations be in force until the same shall have been filed with and approved by the Interstate Commerce Commission."

The order of the Interstate Commerce Commission of October 11, 1915, approving rules and instructions in compliance with said acts, is as follows:

"It is ordered that the said rules and instructions for the inspection of locomotives and tenders and all their parts, as follows, be, and the same are hereby, approved, and from and after the 1st day of January, 1916, shall be observed by each and every common carrier subject to the provisions of the act of Congress aforesaid, as the minimum requirements: Provided, that nothing herein contained shall be construed as prohibiting any carrier from enforcing additional rules and instructions not inconsistent with the foregoing, tending to a greater degree of precaution against accidents."

Appellee vigorously insists that this court "persistently ignored or overlooked" the fact that the rules and instructions in question were approved by the Interstate Commerce Commission as the "minimum requirements" to be observed by the carrier, and as a consequence "entirely misunderstood the scope, effect, and meaning" of those rules. The fact is, however, that this court neither overlooked nor ignored the language showing that the rules were approved as the "minimum requirements" at the time the question as to the effect of the rule with reference to steps on the pilot was considered. We gave that language due consideration, as we thought, and reached the conclusion it was of no importance in determining the question then before us. We thought the Commission meant no more by the proviso than to advise carriers that the rules it had approved were not to be construed as an attempt to deprive them of a right they had, independent of and in spite of any action of the Commission, to enforce rules of their own with respect to matters not covered by rules the Commission had approved, nor inconsistent therewith, and which tended to a "greater degree of precaution against accidents."

Carriers were not forbidden by anything in the statute from enforcing rules of their own consistent with those approved by the Commission, but they were forbidden from changing the Commission's rules without its approval. It cannot be doubted, we think, if the effect of the use of two steps on pilots of engines of the 706 class was to make a rule requiring such engines to be equipped with two steps, it operated to change the rule approved by the Commission, which required them to be equipped with only one step.

If carriers enforced rules of their own which did not operate to change rules of the Commission, and were not inconsistent therewith, such enforcement would not be negligence if, as a matter of fact, the rules tended to a greater degree of precaution against a particular accident in question; but, if carriers failed to comply with rules of the Commission, or enforced rules of their own inconsistent therewith, they would be guilty of negligence as a matter of law and liable to an employé injured thereby, without reference to whether the rule they enforced

tended to a "greater degree of precaution against accidents" or not. If the second step on engine 706 had not been removed by the carrier and its presence on the pilot had been a proximate cause of injury to an employé, it would be no answer to a claim by him for damages he suffered that the second step tended to a "greater degree of precaution against accidents" contemplated from use ordinarily made by employés of steps on the pilot.

In the opinion it was stated that this court was not called upon to determine whether the judgment should be sustained on the theory that appellant was guilty of negligence in failing to notify appellee that it had removed the second step from the pilot or not, because negligence in that respect was not charged against it. In his motion appellee says:

"This contention was not presented by a demurrer or objection to evidence or by motion for a new trial, but is treated by this court as fundamental error after verdict"

—and insists such negligence was charged in his petition. We do not think so, after further consideration of appellee's pleadings.

Perhaps there was no reason for saying anything about that feature of the case in the opinion. It was referred to because of the rule which requires this court, when a case is submitted on special issues and the pleadings make an issue which the parties did not ask the court to submit, and which he did not submit to the jury, and which, if found in a given way, would warrant the judgment, to assume that the trial court found thereon "in such manner as to support the judgment," if there was evidence to sustain such a finding. Article 1985, Vernon's Statutes. What was said was intended merely as an intimation that, if it should be contended there was evidence to support such a finding, this court could not apply the rule and affirm the judgment because negligence in failing to warn appellee was not charged in the petition.

The motion is overruled.

On Appellant's Motion for Rehearing.

[4] Appellant insists that this court, having determined negligence on his part could not be predicated on his failure to have each side of the pilot of engine 706 equipped with two steps, and having further determined that negligence on his part in failing to notify appellee of the fact that one of the steps with which the pilot was originally equipped had been removed was not charged in the pleadings, after reversing the judgment of the trial court, should have rendered judgment in his favor, instead of remanding the cause to that court for a new trial. The contention is sustained; and the judgment

heretofore entered here will be set aside so far as it remanded the cause, and judgment will be here rendered that appellee take nothing by his suit.