**Annette MacDONALD, Inc. and as Next Friend, Appellant,**

v.

**Harry Owen SKINNER, Appellee.**

No. 5466.

Court of Civil Appeals of Texas.

El Paso.

May 31, 1961.

Rehearing Denied July 5, 1961.

Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellant.

Jack Pew, Jr., W. B. Patterson, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

LANGDON, Chief Justice.

This suit was brought by appellant, Annette MacDonald, a widow, individually and as next friend of her minor daughter, Ann Edith MacDonald, for the death of Howard E. MacDonald, her husband, and the father of the minor child.

Howard E. MacDonald was killed when he was struck by an automobile driven by appellee, Harry Owen Skinner, as he was walking across Buckner Boulevard at its intersection with Tarleton Street, in the City of Dallas, on the evening of December

7, 1958. It was alleged that Skinner was guilty of negligence proximately causing the death of the deceased.

The case was tried before a jury. In answer to special issues, the jury found against appellee Skinner on the following numbered issues: (1–2), failure to keep a proper lookout, proximate cause in; (3–4–5), driving at excessive rate of speed; negligence and proximate cause; (8–9–10), failure to swerve to the right negligence and proximate cause; (11–12), speed greater than 35 miles per hour; proximate cause. In answer to other special issues, the jury found: (13–14), that deceased was crossing the boulevard in question at a cross-walk, and that appellee Skinner failed to yield the right of way to the deceased; (15), that deceased did not attempt to cross the street in question at a point other than an intersection; (20), that deceased did not attempt to cross the street in question at a point other than a cross-walk; (22), that deceased did not suddenly leave a place of safety; (27), that deceased did not attempt to cross a street at a point where there was not sufficient light to reveal his presence to automobile drivers on said street; but, in answering special issues (18–19), the jury found that the deceased "failed to keep a proper lookout" and that such failure was a proximate cause of his injuries. Damages found by the jury for the minor child, occasioned by the loss of her father, $19,351.44, and for appellant, for the loss of her husband, $30,102.24.

Appellant's motion for judgment non obstante veredicto was overruled, and take-nothing judgment was rendered against appellant and in favor of appellee, based on the jury finding that the deceased failed to keep a proper lookout. Appellant's motion for new trial was likewise overruled.

Appellant's appeal is predicated upon seven points of error, which fall into two categories.

By Points 1 to 5, inclusive, it is contended that the trial court erred in overruling appellant's motion for judgment non obstante veredicto because there was *no evidence* to support the jury's affirmative answer to Special Issues Nos. 18 and 19, and because the evidence was *insufficient* to support the jury's affirmative answer to Special Issues Nos. 18 and 19. By Points 6 and 7, it is contended that the trial court erred in failing to grant a new trial on the ground of jury misconduct, and because of prejudicial error during the deliberation of the jury; it being charged that, after a majority of the jurors had voted that the deceased kept a proper lookout, it was overtly stated and discussed that affirmative answers to Special Issues 18 and 19, on the question of whether the deceased failed to keep a proper lookout, would not affect appellant's right to recover, the jury having thereafter answered such issues in the affirmative.

By counter-points, appellee contends that appellant's points of error may not be considered or reviewed by this court because some of the evidence introduced and considered on the trial of this cause is not in the appellate record now before this court. The record, appellee says, is therefore incomplete, and he contends that this court, in the absence of a complete record, cannot review appellant's points which question the sufficiency of the evidence to support the jury's findings, and the trial court's action in overruling appellant's motion for new trial based on alleged jury misconduct.

The omitted evidence, which is the basis for appellee's contention that the record is incomplete, consisted of a rough, freehand sketch of the intersection of Buckner Boulevard and Tarleton Street, drawn with chalk on a large blackboard (a regular fixture of the courtroom) by Edwin Tompkins, a witness for appellant. The sketch did not purport to be an accurate scale drawing of the accident scene. It was drawn for the purpose of affording a method or means by which the position of physical details and objects, testified about by the various witnesses, could be located with respect to the intersection in question. Various marks, symbols and lines were placed on the

sketch, not only by the witness Tompkins, but by succeeding witnesses, as well as by the lawyers on both sides of the case.

The blackboard was offered in evidence by appellant and was admitted without objection. It does not appear, however, to have been marked for identification or assigned an exhibit number. For purposes of this opinion, we will assume that it was properly placed in evidence and was considered by the jury, along with other evidence admitted by the court during the course of trial.

When the blackboard sketch was offered in evidence by appellant, appellee stated " * * * it can't go into the record in this case except by photograph. Now, I have no objection to it and I promise I am not going to erase it." No effort was made by appellant to photograph, or otherwise preserve, the sketch for the record in this case, until long after the trial of this cause, and by that time the blackboard, which was in every-day use in the courtroom, had been erased and the sketch destroyed.

■ When the sufficiency of the Statement of Facts was challenged by appellee by reason of the failure of appellant to preserve the blackboard sketch and to include it in the Statement of Facts, appellant filed a motion to amend or supplement the Statement of Facts, and attached to such motion a sketch drawn by the witness Tompkins, which purports to be a reproduction of the drawing made by the witness on the blackboard. Appellant's motion is based on Rule 428, Texas Rules of Civil Procedure, relating to the subject of how matters "omitted" from the record may be supplied. Appellee contends that the diagram appellant introduced into evidence, and then failed to have preserved, could probably have been brought forward as "omitted" evidence under Rule 428 while it was in existence, but that, since the diagram no longer exists, it is not omitted evidence, but "destroyed" evidence, and the applicable rule is Rule 77, T.R.C.P., which permits lost or destroyed evidence to be supplied by order of the trial court made pursuant to sworn motion, after notice and hearing.

We believe appellee's objection to appellant's motion to amend or supplement the record in this case by ex parte affidavit must be sustained, since the method adopted by appellant does not conform to the requirements of either Rule 77 or Rule 428, T.R. C.P. Appellant's motion to amend or supplement the Statement of Facts is accordingly refused.

■ This brings us to a consideration of appellee's counterpoints, by which it is contended that the record before us, in the absence of the sketch, constitutes an incomplete record, thus precluding this court from considering appellant's points based on "no evidence" and upon the "insufficiency of the evidence", because some of the evidence is not before the court. For the same reasons, it is contended that an appellate court may not determine the question of "probable harm" resulting from the alleged jury misconduct, since the Texas Rules of Civil Procedure require that probable harm be determined from the "entire record", and the "entire record" is not before the court.

We have carefully examined the testimony of each and every witness who, in any way, contributed to the blackboard sketch, or otherwise referred to or alluded to it in the testimony given. We have concluded that the drawing made on the blackboard, part of which was made by the lawyers and part by the witnesses, constituted no more than a courtroom prop, used by counsel on both sides to illustrate the testimony of the witnesses; but otherwise added nothing to what was said by the witnesses themselves.

Plaintiff's Exhibit No. 2 purports to be an aerial photograph of Buckner Boulevard at its intersection with Tarleton Street. It was identified by the witness Tompkins, who testified that it correctly portrayed the intersection in question and also showed the location of his house, the Lake Highland Shopping Center, the 7–11 Store, etc. The witness pointed out and lo-

cated each of these landmarks; identified the light-colored area in the photograph as the cement island in Buckner Boulevard, and also other physical details shown on the photograph. The witness was then asked by counsel to step down (to the blackboard), in order that counsel would be able to show the jury the intersection and to ask the witness some questions about it. The witness was told that he could look at the photograph if he wanted to, and was then instructed to " * * * just draw the intersection generally of Buckner and Tarleton and where your house is, and about this concrete divider that you show in the picture."

The sketch itself was not evidence; it was drawn from, and purported to show, only what was depicted by the aerial photograph already in evidence. The only legitimate purpose of the sketch was to enable the jury to follow the testimony of the witness with respect to the scene of the accident as shown by the photograph. The sketch itself was never identified as truly and accurately portraying either the scene of the accident, as shown by the photograph from which it was drawn, or the scene of the accident as it existed at the time in question. Under the facts and circumstances of this case, the blackboard drawing could not be considered evidence in the sense that it constituted proof of any fact, or even that it met the test of the exclusionary rules.

If we are correct in holding, as we do, that the blackboard drawing was not evidence, but merely a courtroom prop, then the failure of appellant to preserve the drawing and to include it in the record on appeal is not fatal to appellant's right to appellate review of her contentions that there was "no evidence"; and, in the alternative, that the "evidence was insufficient" to support the jury's answers to certain special issues where appellee, by counterpoints, contends only that the record, in the absence of the blackboard drawing, is not a complete record, and therefore may not be considered by the court.

We think it must also be noted that, although appellee, through his counsel, pointed out to appellant when the Statement of Facts was presented to him for approval, that it contained no photograph of a drawing on a blackboard which was introduced in evidence, nevertheless, he approved the Statement of Facts and made no objection thereto, or filed a motion to strike. Rule 404, T.R.C.P., provides—and numerous Texas cases have held—that objections to the Statement of Facts are waived if not presented to the Court of Civil Appeals by motion filed within 30 days after the filing of the record. We hold that appellee's failure to object to the Statement of Facts within the time provided by Rule 404, T.R.C.P., constituted a waiver of such objection. Looney v. Wing, Tex.Civ.App., 195 S.W.2d 557; Pacific Fire Ins. Co. v. Smith, 145 Tex. 482, 199 S.W.2d 486; Sparks v. Chandler, Tex.Civ.App., 201 S.W.2d 252.

The evidence in this case amply supports the jury findings of negligence and proximate cause against appellee Skinner; therefore, if there was "no evidence" to support the single ground of contributory negligence found by the jury, appellant would be entitled to judgment for the amount of damages found by the jury to have been sustained by appellant, and we would be required to reverse the judgment of the trial court and here render judgment for appellant.

Appellant contends that there is neither direct nor circumstantial evidence to support the jury's finding that the deceased did not keep a proper lookout, other than the fact that the accident did happen. There is no testimony from any witness who says that the deceased was not paying attention to what he was doing, or that he was looking anywhere other than where he should have been looking.

After a careful examination of the Statement of Facts, we have concluded that there is no direct evidence to support the jury's finding that the deceased failed to keep a proper lookout. In the absence of direct

evidence to support the jury finding, we next looked for circumstances in evidence from which the jury might reasonably have concluded that the deceased failed to keep a proper lookout. Aside from the fact that the accident did happen, we have been unable, after a most careful scrutiny of the entire record, to find any circumstances in evidence from which the jury might properly have inferred that the deceased had failed to keep a proper lookout.

■ The rule is that it will be presumed that the injured person was in the exercise of due care for his own safety when the accident occurred. Such presumption may be overcome by either direct or circumstantial evidence, but the burden is upon the defendant, seeking to escape liability for his own negligent conduct or acts, to both plead and prove the defense of contributory negligence. It is also the rule that contributory negligence is not established by evidence which is equally consistent with the exercise of care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof. Jordan v. City of Lubbock, Tex.Civ.App., 88 S.W.2d 560; Salter v. Galveston, H. & S. A. Ry. Co., Tex.Civ. App., 285 S.W. 1112; Dewhurst v. South Texas Rendering Co., Tex.Civ.App., 232 S.W.2d 135.

The Supreme Court of Texas, in the case of Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, speaking through Justice Walker, held that the facts and circumstances established by the evidence, including testimony that decedent, after stopping, entered the intersection and drove forward slowly, steadily and directly into the path of defendant's automobile, supported the jury's findings that the collision was proximately caused by the failure of decedent to keep a proper lookout.

In the case at hand, the only witnesses to the accident were the defendant Skinner and his passenger. Neither of them saw the decedent until scant seconds before the accident occurred, and at that time he was already in the path of the automobile. Defendant himself testified that it was too late at that time for him to swerve to the right and avoid striking the decedent.

■ It is true, and we recognize, that decedent was under a duty, before attempting to cross the intersection in question, not only to look, but to observe, in a careful and intelligent manner, the traffic and general situation at and in the vicinity of the intersection, including the speed and proximity of approaching vehicles. In the absence of facts and circumstances in evidence to show the contrary, we believe it must be assumed that decedent did look, and that he did observe defendant's approaching car, in the careful and intelligent manner required of him, by the holding in the Lynch case, supra. The only evidence to rebut this presumption is the fact of the accident itself, coupled with the additional fact that the decedent's view of defendant's approaching vehicle was unobstructed. The fact that the accident occurred is no evidence that decedent failed to keep a proper lookout, and we think that the mere fact that decedent's view of defendant's approaching vehicle was unobstructed is insufficient evidence to support the jury's finding that decedent failed to keep a proper lookout.

After having carefully searched the entire record for evidence to support the jury's finding that decedent failed to keep a proper lookout, we have grave doubt as to whether there is any evidence of probative value to support such finding. The evidence, such as it is, amounts to hardly more than a scintilla. However, in conformity with the rule applicable to a determination of the question, we overrule appellant's points of "no evidence" as to proper lookout.

Considering, next, appellant's points by which it is contended that the evidence is insufficient to support the jury's finding that decedent failed to keep a proper lookout, and having considered and carefully weighed all of the evidence in the case—

that which supports the finding, as well as that which does not—we have concluded that the jury finding that the decedent did not keep a proper lookout is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Jaynes v. Lee, Tex.Civ.App., 306 S.W.2d 182; Houston & T. C. R. Co. v. Anglin, 99 Tex. 349, 89 S.W. 966, 2 L.R.A., N.S., 386.

█ Where the evidence is more consistent with the exercise of care than it is with the inference of its absence, it will not support the verdict of the jury. Dewhurst v. South Texas Rendering Co., supra; Burton v. Chandler, Tex.Civ.App., 304 S.W.2d 170.

In view of our holding, it is unnecessary to discuss appellant's other points, as they are concerned with alleged errors which probably will not arise upon another trial.

The judgment of the trial court is reversed, and the cause remanded.